**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES<br><br>v.<br><br>KEVIN GUADALUPE | No. 19-cr-10459-RWZ |

## MOTION TO DISMISS, OR ALTERNATIVELY, TO ORDER DISCOVERY OF GRAND JURY PROCEEDINGS, AND/OR TO STRIKE SURPLUSSAGE

Defendant Kevin Guadalupe had just turned 18 when he was indicted for racketeering conspiracy as a purported member of the Latin Kings. The indictment alleges that the conspiracy began in 2009 — *when Mr. Guadalupe was 8 years old* — and continued for a handful of weeks past his 18th birthday. Notably, the indictment does *not* allege that Mr. Guadalupe ratified his membership or committed any act in furtherance of the conspiracy after he reached majority. Criminal conduct as a minor constitutes juvenile delinquency, over which this Court has no jurisdiction. At minimum, an indictment filed in federal court must make *some* allegation of adult conduct in order to give rise to a prosecutable federal offense, absent compliance with the Federal Juvenile Delinquency Act. Accordingly, the indictment should be dismissed against Mr. Guadalupe. If the Court declines to dismiss, it should order discovery of presentment to the grand jury to determine whether the indictment of Mr. Guadalupe for an adult crime was proper. Barring that, at a minimum, the Court must strike all allegations of conduct that occurred while Mr. Guadalupe was a minor.

## RELEVANT FACTS

Mr. Guadalupe is an 18-year-old high school student with a supportive family. He was released by the Court on December 19, 2019 and has been residing at home in New Bedford,

with his family, and attending a wraparound high school, counseling, and vocational skills program at the North Star Learning Center.

Mr. Guadalupe turned 18 on October 26, 2019. One month and eight days later, on December 4, 2019, the government filed a 43-page indictment charging 62 defendants with RICO conspiracy and other offenses stemming from their alleged participation in the Latin Kings organization. Mr. Guadalupe is charged only in Count 1, conspiracy to conduct the affairs of an enterprise through a pattern of racketeering (RICO), 18 U.S.C. § 1962(d), occurring "from approximately April 2009 until the present." D.E. 1 at 14.[1] In other words, he is charged with an offense that took place from the time he was eight years old until five weeks after he turned 18.

The indictment alleges no conduct by Mr. Guadalupe after October 26, 2019, his 18th birthday. The only mention of *any* conduct after that date – by *anyone* – is in Count 2, in which Mr. Guadalupe is not charged. *See* D.E. 1 at 24. Count 2 charges a drug conspiracy by twelve other defendants "continuing until or about December 2019." *Id.*

The government has not followed the procedures in the Federal Juvenile Delinquency Act (FJDA), which requires a certification by the Attorney General before a juvenile can be prosecuted in federal court. *See* 18 U.S.C. § 5032. Because nothing in the indictment alleges any adult conduct by Mr. Guadalupe, the Court lacks jurisdiction, the indictment fails to state an offense under the United States Code, and it must be dismissed. Even if the Court determines that the indictment is facially sufficient, it should order discovery of the Grand Jury proceedings to determine whether appropriate instructions and evidence were presented to permit charging

---

[1] He is also included in the corresponding forfeiture allegations.

Mr. Guadalupe as an adult. Barring that, the Court should strike all conduct occurring when Mr. Guadalupe was a juvenile from the indictment.

## LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

Federal Rule of Criminal Procedure 12(b) permits a defendant to raise, pre-trial, "any defense, objection, or request that the court can determine without a trial." This includes the "failure to state an offense" or another "defect in the indictment." It also includes defects in the institution of the prosecution, including defects in the grand jury proceedings.

An indictment fails to state an offense where it fails to allege an element. *See United States v. Wylie*, 919 F.2d 969, 972 (5th Cir. 1990); *United States v. Pupo*, 841 F.2d 1235, 1239 (4th Cir. 1988). Separately, an indictment fails to state an offense if the specific facts alleged in it fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation. *See United States v. Hedaithy*, 392 F.3d 580, 587 (3d Cir. 2004). Finally, "[a] motion that the court lacks jurisdiction may be made at any time while the case is pending." Fed. R. Crim. P. 12(b)(2).

Ordinarily, with respect to such a motion, "the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense." *United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012); *see also United States v. King*, 581 F.2d 800, 802 (10th Cir. 1978) (an "indictment may be dismissed if it is insufficient to charge an offense. But it may not be properly challenged by a pretrial motion on the ground that it is not supported by adequate evidence"). An invalid indictment cannot be cured by a Bill of Particulars. *See United States v. Murphy*, 762 F.2d 1151, 1154 (1st Cir. 1985) (citing *Russell v. United States*, 369 U.S. 749, 770 (1962)).

## THE FEDERAL JUVENILE DELINQUENCY ACT

Juveniles are fundamentally different from adults, a difference recognized both in the neuroscience and in the law. *See Miller v. Alabama*, 567 U.S. 460, 471 (2012) ("children are constitutionally different from adults"). They "have a lack of maturity and an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking." *Id.* (internal quotation marks and citation omitted). They "are more vulnerable . . . to negative influences and outside pressures, including from their family and peers; they have limited control over their own environment[; and they] lack the ability to extricate themselves from horrific, crime-producing settings." *Id.* (internal quotation marks and citations omitted); *see also Graham v. Florida*, 560 U.S. 48 (2010); *Roper v. Simmons*, 543 U.S. 551, 564, 569 (2005). Rapidly developing neuroscience has made clear that young people remain neurologically immature until well into their twenties. *See, e.g.,* Cohen et. al., "When Is an Adolescent an Adult? Assessing Cognitive Control in Emotional and Nonemotional Contexts." *Psychological Science* 27, no. 4 (April 2016): 549–62 (young adults between the ages of 18 and 21 continue to show diminished cognitive control, particularly in emotionally aroused situations, which is reflected in the development of prefrontal circuitry).

The special status of young people is addressed in the Federal Juvenile Delinquency Act (FJDA), which closely circumscribes the prosecution of juveniles in federal court. The FJDA provides that:

> A juvenile alleged to have committed an act of juvenile delinquency . . . shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district court of the United States that . . . (3) the offense charged is . . . [one of certain offenses] . . and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction.

> If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State.

18 U.S.C. § 5032. A "juvenile" is defined as "a person who has not attained his eighteenth birthday" or, "for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday." *Id.* § 5031. "[J]uvenile delinquency" means "the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult." *Id.* § 5031.

Absent certification by the Attorney General, the FJDA strips federal courts of jurisdiction over acts of juvenile delinquency: "the statute provides that unless the Attorney General certifies to the district court that the case satisfies one of certain enumerated conditions, the district court may not proceed against an individual under the age of 21 for acts committed before reaching the age of 18." *United States v. Vargas-De Jesus*, 618 F.3d 59, 61-62 (1st Cir. 2010); *see* 18 U.S.C. § 5032 ("no criminal prosecution shall be instituted for the alleged act of juvenile delinquency except as provided [in the statute]").

"[F]or continuing crimes alleged to have occurred both before and after the defendant turned 18, the statute provides no clear answer to the question whether the JDA applies." *United States v. Camez*, 839 F.3d 871, 874 (9th Cir. 2016). The Courts of Appeals have agreed that the fact that a defendant begins participating in a continuing offense as a juvenile does not deprive a court of jurisdiction over an otherwise-valid (adult) prosecution. *See United States v. Welch,* 15 F.3d 1202, 1207 n.5 (1st Cir. 1993) (the FJDA "cannot be read to preclude an adult conspiracy prosecution simply because the accused's participation in the conspiracy *began* while he was under age eighteen"); *United States v. Spoone*, 741 F.2d 680, 687 (4th Cir. 1984) (FJDA should not be read to prevent "an adult criminal defendant from being tried as an adult simply because he first became embroiled in the conspiracy … while still a minor"); *United States v. Ramirez*,

297 F.3d 185, 191 (2d Cir. 2002); *United States v. Ruben Flores Hernandez #7*, No. 1:02-CR-730-BBM-AJB, 2006 U.S. Dist. LEXIS 107542, at *53 (N.D. Ga. May 9, 2006) (collecting cases). At the same time, courts have *disagreed* about the degree of post-majority participation required in order to sustain an adult prosecution. *See United States v. Camez*, 839 F.3d 871, 876-77 (9th Cir. 2016) (collecting cases). They have also disagreed about the extent to which juvenile conduct may be used as evidence in a properly founded adult prosecution. *See id.* at 874.

The First Circuit has utilized the doctrine of "ratification," grafted from agency law, to determine whether and when the conduct of an 18-year-old defendant is sufficient to sustain an adult prosecution. *See Welch,* 15 F.3d at 1211-12 (an "apt analogy for FJDA cases involving age-of-majority-spanning conspiracies may be the contract 'ratification' doctrine, which provides that a minor legally incapable of contracting may nonetheless affirm by his post-majority conduct" (citing *United States v. Maddox*, 944 F.2d 1223, 1233 (6th Cir. 1991)).

There are limitations to the application of the ratification doctrine, however. It must adhere to the "fundamental principle that criminal liability is premised on some discernible *actus reus*" by the post-majority defendant: "rather than face conviction simply for failing to 'withdraw' from the age-of-majority-spanning conspiracy prior to attaining age eighteen, there [can] be no conviction unless the jury found that appellants in some manner 'ratified' their participation in the conspiracy after attaining majority." *Welch*, 15 F.3d at 1212; *see also United States v. Thomas,* 114 F.3d 228, 264-65 (D.C. Cir. 1997) (a "defendant must do something affirmatively to further the conspiracy as an adult in order for his offense to fall outside the FJDA's definition of 'juvenile delinquency'"); *Maddox*, 944 F.2d at 1233 ("the government must make a threshold demonstration that the defendant who joined a conspiracy prior to his

eighteenth birthday 'ratified' his membership in that conspiracy after his eighteenth birthday"). [2]

The First Circuit's requirement of a "discernible *actus reus*" has been referred to as "the most restrictive of the various approaches." *Camez*, 839 F.3d at 876.

## ARGUMENT

### I.   THE INDICTMENT FAILS TO STATE AN OFFENSE OVER WHICH THIS COURT HAS JURISDICTION AND IT MUST BE DISMISSED.

#### A.   Adult Criminal Conduct Must Be Presented to the Grand Jury and Pleaded in the Indictment.

For five independent reasons, discussed below, an indictment must allege post-majority conduct in order to state an offense under the United States Code, confer jurisdiction in this Court, and apprise the defendant of what he must be prepared to meet. The allegation in the indictment that the conspiracy "continued until the present" does not satisfy this requirement.

##### 1.   Adult Conduct Is a Jurisdictional Fact Which Must Be Charged in the Indictment

An "indictment charging that a defendant violated a law of the United States gives the district court jurisdiction over the case and empowers it to rule on the sufficiency of the

---

[2] The cases provide some idea of what conduct suffices. In *Vargas*, the First Circuit found this post-majority conduct sufficient: "[t]hree officers from the Puerto Rico Police Department testified that they continued to observe Vargas at the local drug point after he had turned 18[;]. … [and] a member of a rival drug gang[] testified that Vargas attended a meeting between rival drug gangs … four months after Vargas's eighteenth birthday, where Vargas declared that he was the 'owner' of cocaine for his group." *Vargas* 618 F.3d at 66. In *United States v. Soto-Beniquez*, the court found sufficient evidence of participation in a drug conspiracy where the defendant, post-majority, "stood guard at the Callejon Nueve point, packaged and stored narcotics for the point, and participated in the unsuccessful mission to Fajardo … to find and kill Vitito." 356 F.3d 1, 23 (1st Cir. 2003); *see also United States v. Maddox*, 944 F.2d 1223, 1233-34 (6th Cir. 1991) (discussing "overwhelming[]" evidence defendant sold drugs after his 18th birthday); *United States v. Thomas*, 324 U.S. App. D.C. 374, 114 F.3d 228, 266-67 (1997) (defendant made drug sales to undercover agents post-majority and "was convicted separately of two substantive offenses committed in furtherance of the narcotics and RICO conspiracies after he turned eighteen").

indictment." *McCoy v. United States*, 266 F.3d 1245, 1252 (11th Cir. 2001) (finding that drug

quantity is not a jurisdictional fact but, "at most, one of sufficient specificity of the indictment").

The Circuits have "uniformly held that the certification requirement of 18 U.S.C. § 5032 is a

prerequisite to a district court's subject matter jurisdiction." *United States v. Vargas-De Jesus,*

618 F.3d 59, 64 (1st Cir. 2010) (collecting cases); *see United States v. Chambers,* 944 F.2d 1253,

1258-1260 (6th Cir. 1991) (the FJDA "effectively eliminated the underage defendant's 'crime,'

and replaced it with 'juvenile delinquency,' a state *vesting jurisdiction in the federal courts*

*under the terms of section 5032 or not at all*" (emphasis added)); *United States v. Wong,* 40 F.3d

1347, 1363 (2d Cir. 1994) ("Certification is a prerequisite to the exercise of federal jurisdiction

over juveniles"). For this reason, a conviction based on juvenile conduct alone must be vacated,

whenever discovered, "for lack of jurisdiction." *Vargas*, 618 F.3d at 64-65.

Here, the government failed to either provide a certification to proceed against Mr.

Guadalupe as a juvenile or charge him with any adult acts which would give rise to an adult

offense. *See United States v. Al Hedaithy*, 392 F.3d 580, 587 (3d Cir. 2004) (internal quotation

marks and citation omitted) ("for purposes of Rule 12(b)(2), a charging document fails to state an

offense if the specific facts alleged in the charging document fall beyond the scope of the

relevant criminal statute, as a matter of statutory interpretation"). With no post-majority conduct,

the indictment alleges only acts of juvenile delinquency over which this Court has no

jurisdiction.

Failing to state an offense over which this Court has jurisdiction, the indictment must be

dismissed. *See United States v. Markus*, 555 F. Supp. 375 (D.N.J.), *aff'd*, 721 F.2d 442 (3d Cir.

1983) (dismissing indictment for transporting stolen checks across state lines in violation of 18

USCS §2311, where counts failed to allege the jurisdictional minimum amount of $5,000 and therefore court lacked jurisdiction).

    2.   <u>Adult Conduct Is an Essential Element Which Must Be Presented in the Indictment.</u>

"An essential element of a crime … is 'one whose specification . . . is necessary to establish the very illegality of the behavior and thus the court's jurisdiction.'" *United States v. Hooker*, 841 F.2d 1225, 1231 (4th Cir. 1988) (en banc) (quoting *United States v. Cina*, 699 F.2d 853, 859 (7th Cir. 1983)). An indictment that fails to set forth all of the elements of the offense sought to be charged must be dismissed, and any conviction obtained on the basis of such an indictment is void. *See Resendiz-Ponce*, 549 U.S. at 107; *Walker v. United States*, 342 F.2d 22, 26 (5th Cir. 1965); *Hooker*, 841 F.2d 1225 (vacating RICO conspiracy conviction based on indictment that did not include interstate commerce element); *United States v. Spinner*, 180 F.3d 514, 515 (3d Cir. 1999) (vacating fraud conviction based on indictment that did not include interstate commerce element).[3]

The indictment here is akin to the one in *Hooker*, which failed to allege the element of interstate commerce. In vacating the conviction there, the Fourth Circuit explained that:

> The first four elements of a RICO offense, as they were alleged in Count III, do not by themselves state *any* federal crime, nor do they show that the grand jury found all elements of *any* federal crime. The court thus had no jurisdiction to try Hooker under that count of the indictment, and its judgment must be vacated.

*Hooker*, 841 F.2d at 1232 (emphasis in original).

---

[3] The defect here could also be viewed as charging conduct not proscribed by the statute. The result is the same. *See United States v. Thian Teh*, 535 F.3d 511, 515 (6th Cir. 2008) (noting that "[c]laims that a statute named in an indictment does not proscribe the alleged conduct are generally treated as claims that the indictment 'fails to state an offense'" and collecting cases).

So too here: the indictment fails to "state *any* federal crime" or "show that the grand jury found all the elements of *any* federal crime." *Id*. Acts of juvenile delinquency, even when coupled with a failure to withdraw from the conspiracy, are not offenses under the United States Code. *See Chambers,* 944 F.2d 1253, 1258-1260 ("In cases where the federal government accuses adults of committing federal crimes such as possession with intent to distribute controlled substances, federal statutes confer jurisdiction upon the district courts," but the FJDA "revoked the district courts' … subject-matter jurisdiction over criminal prosecutions against juveniles"); *Welch*, 15 F.3d at 1212; *Thomas,* 114 F.3d at 264-65. A post-majority *actus reus* is therefore "necessary to establish the very illegality of the behavior and thus the court's jurisdiction." *Hooker*, 841 F.2d at 1231. Accordingly, adult conduct is an element which must be presented to the grand jury and pleaded in the indictment.

For the same reason, the allegation that the RICO conspiracy in Count One "continued until the present" does not save the indictment. The mere "continu[ation]" of a conspiracy – absent affirmative acts of ratification by an 18-21 year old – is insufficient to plead an offense under the United States Code. *See Welch*, 15 F.3d at 1212 (noting the failure of an 18 year old to withdraw from a conspiracy is insufficient to evade the FJDA); *Thomas,* 114 F.3d at 264 (noting the post-majority ratification requirement is "a departure from ordinary conspiracy law, which generally requires affirmative withdrawal from a conspiracy in order to end the period of liability rather than continued affirmative acts in furtherance of the conspiracy"); *Maddox*, 944 F.2d at 1233 ("we do not believe, however, that a person who does absolutely nothing to further the conspiracy or to reaffirm membership in it after his eighteenth birthday can be held criminally liable as an adult in federal court"). This indictment alleges no crime by Mr. Guadalupe, whether the conspiracy "continued" or not.

Because the right to have all elements included in the indictment and passed upon by the grand jury "derives from the Fifth Amendment," the defect cannot be cured by notice to the defendant of the element or even instruction to the jury that it must find the element proven. *Spinner*, 180 F.3d at 516*; Hooker,* 841 F.3d at 1230-31. For this reason, the only remedy from this jurisdictional defect is dismissal.

> 3.   *Apprendi* Requires Presentment of Adult Conduct in the Indictment.

Under *Apprendi*, any fact other than the fact of a prior conviction that increases the penalty beyond the prescribed statutory maximum sentence must be alleged in the indictment. *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000). Such a fact is "the functional equivalent" of an element of the offense with the greater statutory maximum sentence. *Id.* at 494 n.19; *see also Alleyne v. United States*, 133 S. Ct. 2151, 2161-63 (2013).

Here, an adult act giving rise to an adult crime is a fact that increases Mr. Guadalupe's sentencing exposure enormously. *Compare* 18 U.S.C. § 1963(a) (setting maximum penalty for RICO violation at life, where the maximum penalty for the underlying racketeering activity includes life imprisonment), *with* 18 U.S.C. § 5037(c)(2)(A) (providing that a juvenile between the ages of 18 and 21 may be placed in official detention for a maximum of five years). Thus, *Apprendi* requires adult conduct – which converts what is otherwise an act of juvenile delinquency into a criminal offense – to be presented to the grand jury and included in the indictment.

> 4.   An Indictment Alleging Only Juvenile Delinquency Charges a Non-Offense.

"It is perfectly proper, and in fact mandated, that the district court dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense." *United States v.*

*Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983); *see United States v. Foley*, 73 F.3d 484, 488 (2d Cir. 1996).

An indictment might charge a non-offense in numerous ways. *See*, *e.g., United States v. White,* 258 F.3d 374, 384 (5th Cir. 2001) (overturning conviction where "the indictment on its face reflects as a matter of law that neither of the only two predicate offenses alleged in the count of conviction for violating section 922(g)(9) was a 'crime of domestic violence'"); *United States v. Meacham*, 626 F.2d 503, 508-10 (5th Cir. 1980) (conspiracy to attempt to import marijuana was not an offense under the statute charged and therefore "the counts on which the appellants were convicted do not charge an offense" and defendant's plea to such an indictment violated the "right to be free of prosecution for a non-offense … even if his 'factual guilt' had been established validly"); *United States v. Pirro*, 96 F. Supp. 2d 279, 282 (S.D.N.Y. 1999) (striking portion of indictment under Rule 12(b) because indictment failed to allege that a specified individual was a "shareholder" and therefore indictment failed to allege a "violation of a 'known legal duty,'" as required for tax code violation).

Here, all of the racketeering acts in the world, committed by a juvenile, are not a crime against the United States. The indictment consists "only of specific conduct that, as a matter of law, [i]s outside the sweep of the charging statute." *United States v. Peter*, 310 F.3d 709, 714 (11th Cir. 2002).

### 5. The Sixth Amendment Requires the Presentment of Adult Conduct in Order to Provide Adequate Notice.

A vital function of an indictment is to provide "such description of the particular act alleged to have been committed by the accused as will enable him properly to defend against the accusation." *United States v. Tomasetta*, 429 F.2d 978, 979 (1st Cir. 1970); *United States v. Murphy,* 762 F.2d 1151, 1154 (1st Cir. 1985). The Sixth Amendment may require the inclusion,

in an indictment, of a non-element where liability "hinge[s]" on that fact. *Murphy*, 762 F.2d at 1154. Thus, in *Murphy*, the First Circuit invalidated an indictment which alleged obstruction of an official proceeding but failed to identify *which* official proceeding. *Id*. It did so even under the plain error standard. *Id*. at 1155. In *Russell*, the Supreme Court found that an indictment for refusing to answer questions before Congress was defective where it failed to allege *which* question the defendant had refused to answer. *Russell*, 369 U.S. at 764. The Court reasoned that guilt hinged "so crucially upon [] a specific identification of fact" that notice was required. *Id*. "Without sufficient information to identify that conduct which the grand jury has deemed adequate to support an indictment, an accused is at a material disadvantage in meeting the charge against him." *Tomasetta*, 429 F.2d at 979.

Here, too, the indictment fails to allege the crucial fact which "the grand jury has deemed adequate to support an indictment." *Id*. The "crucial" fact – an adult act which converts this conduct into a *crime* under the United States Code – is omitted. *Russell*, 369 U.S. at 771.

### 6.   The Constitution Requires that Juvenile Conduct Be Treated Differently Than Adult Conduct.

The United States Supreme Court has repeatedly recognized the fundamentally – constitutionally – distinct nature of juveniles and the constitutional limitations on the assignment of criminal responsibility for the acts of juveniles. *See Miller,* 567 U.S. 460*; Graham*, 560 U.S. 48; *Roper*, 543 U.S. 551. Here, the FJDA clearly states that an individual between the ages of 18 and 21 is prosecuted for conduct that occurred before his 18th birthday is a "juvenile." This *entire* indictment concerns conduct that occurred before Mr. Guadalupe's birthday. Any reading of the FJDA to permit this case to proceed essentially ignores Mr. Guadalupe's age and violates the Constitution under *Miller*, *Graham*, and *Roper*.

**B.  Pre-Trial Resolution of Mr. Guadalupe's Claim Is Appropriate.**

For all of the reasons discussed above, a discernible, post-majority *actus reus* must be pleaded in the indictment and presented to the grand jury. Even if the Court disagrees, however, and instead treats age as akin to an affirmative defense, Mr. Guadalupe's claim is still appropriately resolved pre-trial under Rule 12(b).[4] This is true for three reasons: First, Mr. Guadalupe's age-based claim must be adjudicated pre-trial, under Rule 12(b), because the claim is clear on the face of the indictment and no further factual development is required. Alternatively, if the claim requires the Court to consider *some* extrinsic evidence, that evidence is closely circumscribed, is segregable from the general trial issues, and is therefore permissibly considered prior to trial under Rule 12(b). Finally, the question what constitutes a "discernable actus reus" is one of law for the Court. *Welch* and other cases deferring resolution of age-based claims are not to the contrary.

### 1.  The Claim Is Properly Resolved Under Rule 12(b).

Although affirmative defenses need not be addressed in an indictment, motions to dismiss based on affirmative defenses may – and in some cases *must* – be addressed prior to trial. *See United States v. Barletta*, 644 F.2d 50, 57 (1st Cir. 1981) (reading Rule 12(b)'s phrase "capable of determination without the trial of the general issue" to "vest[] discretion in the district court to decline to rule pretrial on many motions, but at the same time requir[e] it to rule in a limited class of cases"); *cf*. R. 12(d) ("[t]he court must decide every pretrial motion before trial unless it finds

---

[4] An affirmative defense is defined as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." Black's Law Dictionary 482 (9th. ed. 2009), *quoted in United States v. Stevens*, 771 F. Supp. 2d 556, 566 (D. Md. 2011). Mr. Guadalupe's minority status throughout the conduct charged in the indictment is not an affirmative defense because if all of the allegations in the indictment are true, there simply is no offense alleged.

good cause to defer a ruling"); Advis. Cmt. ("[claims under] Rule 12(b)(3) generally will be available before trial and they can-and should-be resolved then"). For instance, statute of limitations claims may be resolved prior to trial. *See, e.g., United States v. Grimmett*, 150 F.3d 958, 961 (8th Cir. 1998) (statute of limitations "is generally considered 'capable of determination without the trial of the general issue' and may properly be raised before trial"); *United States v. Ramirez*, 324 F.3d 1225, 1228 (11th Cir. 2003) (statute of limitations claim *had* to be raised pre-trial, where it "is clear on the face of the indictment and requires no further development of facts at trial"); *United States v. Upton*, 339 F. Supp. 2d 190, 192 (D. Mass. 2004) (granting pre-trial motion to dismiss on statute of limitations grounds, where motion turned on whether government had properly sealed indictment); *cf. United States v. Carnesi,* 461 F. Supp. 2d 97 (E.D.N.Y. 2006) (deferring resolution of statute of limitations claim based on theory that defendant withdrew from conspiracy prior to date indictment was filed because that was an issue of fact that could only be resolved by jury).

Additionally, claims whose status is less clear – whether affirmative defense or merits issue – can also appropriately resolved prior to trial. *See, e.g., United States v. Cafiero*, 242 F. Supp. 2d 49, 51 (D. Mass. 2003) (granting motion to dismiss on extraterritoriality grounds); *United States v. Sidorenko*, 102 F. Supp. 3d 1124, 1126 (N.D. Cal. 2015) (same). Generally speaking, issues of law should be resolved prior to trial while issues of fact may not be. *See United States v. Pirro*, 96 F. Supp. 2d 279, 283 (S.D.N.Y. 1999).

The First Circuit generally describes three categories of motions under Rule 12(b): those that must, may, and may not be resolved prior to trial. *See Barletta*, 644 F.2d at 58. A district court *must* rule "on any issue entirely segregable from the evidence to be presented at trial," even where the issue requires consideration of evidence extrinsic to the indictment. *Id*. (emphasis

added). At the other end of the spectrum, courts may not adjudicate, pre-trial, "any issues that require review of a substantially complete portion of the evidence to be introduced at trial." *Id*. In the middle, "where a decision requires more than a de minimis review of evidence relevant to the general issue but less than a substantially complete duplication of such evidence," a court has discretion to resolve or defer resolution. *Id*.

The present claim can be decided without looking at *any* extrinsic evidence because the indictment alleges no adult conduct. *See Barletta*, 644 F.2d at 58; *see id.* at 59 ("once a district court has decided that an issue is sufficiently 'capable of determination without the trial of the general issue' it may then find no 'good cause' for deferring a ruling under 12(e)").

Alternatively, if resolution of the claim requires consideration of *some* extrinsic evidence – namely, the undisputed fact of Mr. Guadalupe's birth date and/or a proffer of the government's evidence of post-majority conduct by Mr. Guadalupe – the Court is well within its discretion to consider that evidence and rule pre-trial.

Mr. Guadalupe's age is an undisputed fact and its consideration at this stage is entirely appropriate. *See United States v. Levin,* 973 F.2d 463, 466 (6th Cir. 1992) (affirming dismissal, after evidentiary hearing, where "undisputed extrinsic evidence" showed "that the sales inducements did not constitute criminal activity in violation of § 1395nn(b)(1)(B), and that the defendants ... could not, as a matter of law, have formulated the necessary intent to [violate] [the statute]"); *United States v. Brown*, 925 F.2d 1301, 1303 (10th Cir. 1991) (upholding dismissal based on finding that the intellectual property the defendant allegedly stole could not constitute "goods, wares or merchandise" under the National Stolen Property Act); *United States v. Risk,* 843 F.2d 1059 (7th Cir. 1988) (upholding dismissal where Risk was charged with failure to file

Currency Transaction Reports for transactions involving more than $10,000 and evidence presented to grand jury showed no single transaction of over $10,000).

If the Court finds that resolution of the present claim requires consideration of the government's evidence of post-majority conduct by Mr. Guadalupe, it may hold an evidentiary hearing. At issue is a five-week time period of an indictment covering ten years, and the conduct of one individual. The evidence is limited and is far from a "substantially complete portion of the evidence to be introduced at trial." *Barletta*, 644 F.2d at 58. The Court would be called on to determine, from the government's presentation, where the government alleges a discernable, post-majority *actus reus* sufficient to sustain this Court's jurisdiction.

Courts have done exactly this in cases raising disputes about the age of the defendant. In *United States v. Hashi*, No. 3:10-00260-11, 2012 U.S. Dist. LEXIS 197333, at *6 (M.D. Tenn. June 7, 2012), the court held an evidentiary hearing and required the government to "establish[] by clear and convincing evidence that Defendants… were at least eighteen years of age at the time of the alleged offenses." The offenses there were non-continuing crimes, but the defendant's true birth date was the subject of a factual dispute. The defendant moved to dismiss for lack of subject matter jurisdiction under the FJDA, arguing that he was under age eighteen at the time of the offenses. *Id*. at *5. The government argued that the age was an affirmative defense reserved for trial – as Mr. Guadalupe anticipates it will do here. *Id*. at *4. That contention was rejected and the district court held an evidentiary hearing. *Id*. at *6.[5]  When the government failed to establish that the defendants were over 18 at the time of the offenses, the

___

[5] The court initially denied the motion. After a jury had been impaneled, however, but before the trial commenced, the court convened an evidentiary hearing. In that procedural posture, the ruling took the form of a mistrial. *See id.* at *5.

court dismissed the charges. *Id*. at *10; *see also United States v. Adan*, 913 F. Supp. 2d 555, 560 (M.D. Tenn. 2012) (related case describing *Hashi* as having held "that the Government's proof of these Defendants' ages at the time of their offenses was insufficient to establish … jurisdiction"). In *United States v. Gomez-Gomez*, a case involving both continuing and non-continuing offenses, the court held a pre-trial evidentiary hearing at which "[t]he Government bears the initial burden of proving Defendant's age and must offer *prima facie* evidence of Defendant's adult status[,] … the burden then shifts to Defendant to produce evidence of Defendant's juvenile status[,] … [and] [t]he Government thereafter may rebut Defendant's evidence." No. 09-CR-209(1), 2010 U.S. Dist. LEXIS 2608, at *2-3 (S.D. Ohio Jan. 13, 2010).

While the instant offense is a continuing crime and the offense in *Hashi* was not, there is no reason why this distinction matters for Rule 12(b) purposes. Under Rule 12(b), a factual dispute concerning a defendant's actual age is no different than a factual dispute concerning the date on which a defendant committed certain conduct or, conversely, a factual dispute regarding *what* conduct a defendant committed after a given date. The government's argument in *Hashi* that "age is an affirmative defense… for the jury to decide," *id*. at *4, makes this clear. As in a case raising the statute of limitations as a defense, commonly raised pre-trial, the Court may hear evidence that does not substantially duplicate the general evidence. *See, e.g., United States v. Coia*, 719 F.2d 1120, 1124 (11th Cir. 1983) (denying motion to dismiss on statute of limitations grounds where "[b]oth in the indictment and at the pretrial hearing, the government consistently alleged that the conspiracy continued well into the limitations period").

### 2.   *Welch* Is Not to the Contrary.

The First Circuit's decision in *Welch* is not and cannot be to the contrary. The indictment in *Welch* adequately alleged post-majority conduct sufficient to state an offense and confer jurisdiction. *See* 15 F.3d at 1206 n.3 (noting that the district court was "satisfied that the

*allegations* of appellants' post-majority conduct were sufficient to satisfy the FJDA… [and accordingly] denied their pretrial motions to dismiss the indictment for lack of jurisdiction, as well as their requests for a pretrial evidentiary hearing" (emphasis in original)).[6] Given a facially sufficient indictment, the First Circuit rejected the defendant's argument that "the FJDA required a *threshold* evidentiary hearing on [youthful defendants' age-based] jurisdictional claim *before they could be subjected to trial as adults*." *Id.* at 1206 (emphasis in original). It found that the "proposed evidentiary hearing would place an unwarranted burden on the prosecution." *Id.* at 209.

    *Welch* must be read as limited to the situation in which the indictment is facially sufficient to allege adult conduct and sustain jurisdiction.[7] Any other reading would suggest that courts can reserve the question of their own jurisdiction until after trial, an assertion that is obviously incorrect. *Compare Welch,* 15 F.3d at 1208 n.8 ("the appropriate vantage for determining such jurisdictional facts is after all the evidence has been presented at trial"), and *United States v. Diaz*, 670 F.3d 332, 339 (1st Cir. 2012) ("the jurisdictional question is one that the jury can decide; there is no need for a pretrial evidentiary hearing"), *with Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (courts may not reach the merits of a case before determining jurisdiction because "such an approach . . . carries the courts beyond the

---

[6] The *Welch* indictment is not available on PACER because the case pre-dates electronic records.

[7] Notably, the jury instruction in *Welch* required the "jury to determine whether evidence of appellants' post-majority participation *in itself* was sufficient to support appellants' convictions." *United States v. Welch*, 15 F.3d 1202, 1212 (1st Cir. 1993) (emphasis in original). The court affirmed this instruction. *Welch* is also distinguishable on a practical level. *Welch* involved "an adult conspiracy prosecution [where] the accused's participation in the conspiracy began while he was under age eighteen." 15 F.3d at 1207 n.5. The present situation is precisely the opposite: a juvenile prosecution which was instituted just after the defendant's 18th birthday.

bounds of authorized judicial action and thus offends principles of separation of powers"), and *Espinal Dominguez v. Com. Of Puerto Rico,* 352 F.3d 490, 495 (1st Cir. 2003) ("federal courts are powerless to act in the absence of subject matter jurisdiction").[8] Clearly, then, there must be *some* threshold inquiry into whether the Court has jurisdiction.

Other cases deferring resolution of age-based claims until after trial similarly involve indictments that allege post-majority conduct by the youthful defendant. *See United States v. Delatorre*, 157 F.3d 1205, 1209 (10th Cir. 1998) ("[of] the seven overt acts alleged against him in count three, [only one] allegedly occurred before Delatorre's eighteenth birthday"); *United States v. Wong*, 40 F.3d 1347, 1366 (2d Cir. 1994) (the "indictment charged Wong with [] one predicate act as an adult"); *United States v. Davilla*, 911 F. Supp. 127, 129 & n.3 (S.D.N.Y. 1996) (denying motion to dismiss conspiracy counts because post-majority predicate acts in indictment "allege[d] Roberto Davilla's involvement after his eighteenth birthday"); *United States v. Ruben Flores Hernandez #7*, No. 1:02-CR-730-BBM-AJB, 2006 U.S. Dist. LEXIS

---

[8] The First Circuit's decision in *Vargas* sheds little light on the question what must be pled in the indictment because the issue of age was raised there for the first time on appeal. *See* 618 F.3d at 63. The government conceded "that the age of a defendant is jurisdictional under the statute." *Id.* Where the trial showed no evidence of post-majority conduct, the court vacated two substantive drug counts for lack of jurisdiction. *Id* at 63-65. As to two conspiracy counts, the court found that "the district court had jurisdiction" because "[t]here was ample evidence … that the defendant continued his participation in the conspiracy after he reached the age of majority." *Id.* at 65-67 (citing testimony that Vargas was "at the local drug point after he had turned 18," and "attended a meeting between rival drug gangs …, where Vargas declared that he was the 'owner' of cocaine for his group"). Vargas did not squarely argue that that evidence of post-majority conduct was insufficient under *Welch. See id.* at 66 ("defendant does not contend here that the evidence is insufficient to convict on the drug conspiracy count under the governing standard"). Nor did Vargas argue that the indictment was defective. The court noted that the "indictment was not defective simply because the period includes pre-majority conduct" but did not otherwise address the standard for pleading an age-of-majority-spanning conspiracy. *Vargas*, 618 F.3d at 65 (citing *Welch*, 15 F.3d at 1207).

107542 at *54 (N.D. Ga. May 9, 2006) (indictment alleged that the defendant personally committed multiple overt acts in furtherance of the conspiracy after his 18th birthday).  In *United States v. Ashburn,* No. 11-CR-303 (NGG), 2014 U.S. Dist. LEXIS 62656, at *31 (E.D.N.Y. May 5, 2014), for instance, the indictment charged that defendant Odom himself participated in at least two racketeering acts after his 18th birthday. *See United States v. Ashburn et al.,* E.D.N.Y. No. 11-CR-303, D.E. 71 at 5, (superseding indictment charging, in racketeering act One, that Odom and others conspired to commit murder "between April 2008 and October 2011" and, in racketeering act Seven, that Odom and others conspired to rob jewelry stores "between January 2009 and August 2011," where Odom turned eighteen on April 15, 2010, *see Ashburn,* 2014 U.S. Dist. LEXIS 62656 at *30). The court there denied pre-trial resolution of Odom's age-based claim.

Moreover, the Supreme Court's decisions underscoring the constitutional nature of juvenile status post-date *Welch* and require that both *Welch* and the FJDA be read in light of those decisions.  The FJDA provides that a young person between the ages of 18 and 21, who is charged with acts occurring before his 18th birthday, is a juvenile. Any reading of the statute to render Mr. Guadalupe an adult violates the statute and the Constitution's protections of juveniles, as recognized in *Graham*, *Roper*, and *Miller*.

3.  <u>The claim is properly resolved pre-trial because the question what constitutes a "discernable actus reus" is a legal question for the Court.</u>

Separately, the Court should resolve this claim now because the question what constitutes a "discernable actus reus," under *Welch,* is an issue of law for the Court and not an issue of fact for the jury. *Cf. Pirro*, 96 F. Supp. 2d at 282 (finding a legal issue appropriate for pre-trial disposition because, "[w]hile fact questions raised by an Indictment are the province of the jury, the existence of a known legal duty owed by a taxpayer is a question of law for the court").

In sum, the Court should resolve the claim now because the defect appears on the face of the indictment or, alternatively, requires consideration of limited evidence outside the indictment, and because it presents questions of law for the Court to resolve.

## II. ALTERNATIVELY, THE COURT SHOULD ORDER DISCOVERY OF GRAND JURY INFORMATION TO DETERMINE WHETHER THE INDICTMENT MUST BE DISMISSED DUE TO DEFECTS IN THE GRAND JURY PROCEEDINGS UNDER RULE 12(b)(3)(A)(v) AND THE FIFTH AMENDMENT.

Under Rule 12(b)(3)(A)(v) and the Fifth Amendment, a defendant may seek dismissal where the grand jury proceedings that produced the indictment were defective. In order to return a valid indictment, a grand jury must be properly instructed, *see United States v. Marcucci*, 299 F.3d 1156, 1159 (9th Cir. 2002), and it must find probable cause.[9] *See Vasquez v. Hillery*, 474 U.S. 254, 263, 106 S. Ct. 617, 623 (1986). Disclosure of grand jury material is warranted upon a showing by a defendant that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii); *see United States v. Facteau*, 2016 U.S. Dist. LEXIS 111595, *12-*15 (D. Mass. August 22, 2016). Legal instruction to a grand jury is arguably not restricted by Rule 6 at all, however, because while the "proceedings before the grand jury are secret, [] the ground rules by which the grand jury conducts those proceedings are not." *United States v. Alter*, 482 F.2d 1016, 1028 n.20 (9th Cir. 1973); *see United States v. Belton,* No. 14-cr-30-JST (N.D. Cal. Apr. 21, 2015) ("instructions do not reveal the substance of the grand jury's deliberative process or other information that would

---

[9] The First Circuit has held that a prosecutor is not obligated to provide legal instructions to a grand jury and may instead simply read the relevant statute. *See United States v. Lopez-Lopez*, 282 F.3d 1, 9 (1st Cir. 2002) (citing *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988)). The government may not mislead or erroneously instruct the grand jury, however. *See United States v. Stevens*, 771 F. Supp. 2d 556, (D. Md. 2011) (distinguishing between a mere failure to instruct a grand jury on a point of law and reliance on an erroneous and misleading statement of law).

compromise the secrecy that Rule 6 seeks to protect"); *United States v. Fuentes*, No. CRS-07-0248 WBS (E.D. Cal. June 24, 2008) (same); *United States v. Diaz*, 236 F.R.D. 470, 477-78 (N.D. Cal. 2006); *In re Grand Jury Proceedings*, 813 F. Supp. 1451, 1470 (D. Colo. 1993); *cf. Facteau*, No. 1:15-cr-10076-ADB, 2016 U.S. Dist. LEXIS 111595 at *15 ("What a prosecutor says to the grand jurors before asking them to return an indictment does not compromise the interests sought to be protected by grand jury secrecy").

Under either standard, disclosure of grand jury information is warranted here. In order to permit the grand jury to perform its constitutional function, the prosecutor was required to inform the grand jury of Mr. Guadalupe's age and explained that under the law, his pre-majority acts are not criminal within the scope of the statute. Given the indictment and the facts, it appears likely that the government either failed to inform the grand jury or misinformed the grand jury in multiple ways. First, it seems likely the government failed to inform the grand jury of Mr. Guadalupe's age. Depending on when the grand jury heard the evidence against him, he may *still* have been a minor, making it impossible for the evidence to show an adult act of ratification. The government also likely failed to instruct the grand jury that acts by a minor are acts of juvenile delinquency and may not be considered criminal conduct absent evidence that the defendant committed a discernible, post-majority act. It is implausible that a properly instructed grand jury would have returned an indictment that alleges *only* acts of juvenile delinquency because acts of juvenile delinquency do not violate the statute. The Court should order discovery of the prosecutor's instruction and explanation to the grand jury of the crime, the FJDA, and Mr. Guadalupe's age. *See, e.g., United States v. Sampson*, No. 01-10384-MLW, 2014 U.S. Dist. LEXIS 177477, at *2 (D. Mass. Dec. 26, 2014) (ordering production of "the transcript(s), if any, of the instructions to the grand jury … including but not limited to any instruction(s) that the

special findings would make Sampson eligible for the death penalty…. [and] [i]f the government did not [so] instruct the grand jury…, it shall so state").

Additionally, the government likely failed to inform the grand jury that it had discretion to determine whether to indict and for what charges, *even if* it found probable cause and *even if* it found there was adult conduct, and that it could consider Mr. Guadalupe's youth as a mitigating circumstance in making that decision. *See Vasquez*, 474 U.S. at 263 ("[t]he grand jury does not determine only that probable cause exists…. In the hands of the grand jury lies the power to charge a greater or lesser offense… Moreover, the grand jury is not bound to indict in every case where a conviction can be obtained") (internal quotation marks and citation omitted)); *Gaither v. United States,* 134 U.S. App. D.C. 154, 413 F.2d 1061, 1066 n.6 (D.C. Cir. 1969) ("Since it has the power to refuse to indict even where a clear violation of law is shown, the grand jury can reflect the conscience of the community in providing relief where strict application of the law would prove unduly harsh" (internal quotation marks and citation omitted); *Marcucci*, 299 F.3d at 1167 (Hawkins, J., dissenting) (finding the Constitution requires a grand jury to be informed that it has discretion to decline indictment); *cf. Commonwealth v. Walczak*, 463 Mass. 808, 809-12 (2012) (holding that, when seeking to indict a juvenile for murder, which necessarily proceeds in adult court, the Commonwealth must provide mitigating evidence and must instruct grand jury regarding mitigation); *id*. at 823-24 (Lenk, J., concurring) ("[the] question before us is whether legal instructions should be provided to the grand jury where the return of a murder indictment against the juvenile will deprive him of all protections typically accorded juveniles"). The same is true here as was true in *Walczak*: where an adult indictment against an 18-21 year old will deprive him of the protections afforded under the FJDA, *id*., the grand jury must be informed

that it has discretion as to whether and what charge to bring. The grand jury could well have declined to proceed against Mr. Guadalupe as an adult.

Accordingly, the Court should order the following, narrowly tailored discovery concerning the grand jury proceedings:

- Dates the grand jury convened;
- Dates the grand jury heard evidence regarding Mr. Guadalupe;
- Transcript of instructions to the grand jury;
- List of evidence and witnesses heard by the grand jury concerning events after October 26, 2019;
- Transcripts of testimony regarding events after October 26, 2019, and any transcripts concerning events prior that are required in order to understand the post-October 26, 2020 events.

If the record supports the likely defects described above, the indictment must be dismissed. *See, e.g., United States v. Bowling,* 108 F. Supp. 3d 343, 352-53 (E.D.N.C. 2015) (dismissing multiple counts because of "the government's erroneous legal instruction to the grand jury"); *United States v. Stevens*, 771 F. Supp. 2d 556, 566-68 (D. Md. 2011) (dismissing indictment where the prosecutor gave erroneous advice to the grand jury); *United States v. Cerullo*, No. 05cr1190 BEN, 2007 U.S. Dist. LEXIS 101358, at *5, *9 (S.D. Cal. Aug. 28, 2007) (dismissing indictment where the prosecutor's failure to accurately and fairly explain an important legal issue "misled the grand jury" and "prejudiced the Defendant"); *United States v. Breslin*, 916 F. Supp. 438, 445-46 (E.D. Pa. 1996) (dismissing the indictment on several grounds, but labeling "most disturbing" the prosecutor's erroneous legal instructions to the grand jury); *United States v. Peralta,* 763 F. Supp. 14, 19-21 (S.D.N.Y. 1991) (dismissing the indictment where there was "grave doubt that the decision to indict was free from the substantial influence" of the prosecutor's "misleading statements of law"); *United States v. Vetere*, 663 F. Supp. 381, 386- 87 (S.D.N.Y 1987) (dismissing indictment, even after a guilty verdict at trial, because of the

prosecutor's misleading "presentation both with respect to the facts and the law" to the grand jury).

### III.    AT A MINIMUM, THE COURT MUST STRIKE ALL ALLEGATIONS CONCERNING EVENTS PRIOR TO OCTOBER 26, 2019.

Rule 7(d) provides that, upon motion by a defendant, a court "may strike surplusage from the indictment . . . ." Fed. R. Crim. P. 7(d). A motion to strike surplusage is designed to "protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges." *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988) (internal quotations omitted); *see also United States v. Williams,* 445 F.3d 724, 733 (4th Cir. 2006); *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006); *United States v. Bissell*, 866 F.2d 1343, 1355-57 (11th Cir. 1989).

The indictment must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). Here, juvenile conduct cannot be the "facts constituting the offense charged" because acts of juvenile delinquency *do not constitute an offense* under the United States Code. Juvenile conduct is evidence that can explain or give context to the adult conduct but it is not direct evidence of substantive guilt. *See Thomas,* 114 F.3d at 265-67 (evidence of pre-majority conduct admissible, if at all, under Rule 404(b)); *United States v. Spoone*, 741 F.2d 680, 687 (4th Cir. 1984) (affirming admission of juvenile conduct under Rule 404(b), where the "trial court repeatedly instructed the jury that it could not consider the juvenile acts as evidence of Rusty's guilt").

At first blush, *Welch* appears to dictate otherwise, stating that "in an age-of-majority-spanning conspiracy, the defendant's pre-majority conduct is not merely extrinsic evidence of a prior wrongful act, but an integral component of the alleged conspiracy for which he is on trial." *United States v. Welch*, 15 F.3d 1202, 1211 n.11 (1st Cir. 1993). Yet the First Circuit has

qualified that language, stating: "While the jury may properly hear evidence regarding a

defendant's pre-majority conduct to establish the existence of a conspiracy, we have never held

that the jury can consider all of a defendant's acts in furtherance of the conspiracy as if he was an

adult when he committed them." *Díaz*, 670 F.3d at 341 (internal quotation marks and citations

omitted). However imprecisely, *Díaz*, clearly stands for the proposition that evidence of juvenile

acts is not on equal footing with evidence of adult acts. *See id.*

### A.  Allegations of juvenile conduct by Mr. Guadalupe must be stricken.

Notwithstanding the lack of clarity about whether juvenile conduct is properly considered

extrinsic or intrinsic to the crime charged, it is indisputable that juvenile conduct is only

conditionally relevant. *See id*. at 340 (upholding jury instruction stating: "[y]ou cannot consider

his acts in furtherance of the conspiracy before he turned 18 years of age, *unless you first find*

*beyond a reasonable doubt that he participated in the conspiracy after he reached the age of 18*

*years*" (emphasis added)).

Where, as here, the government fails to allege the existence of the condition, such

conditionally relevant facts must be stricken from the indictment. *See United States v. Pirro*, 96

F. Supp. 2d 279, 282 (S.D.N.Y. 1999) (in a tax offense case, striking conditionally relevant

allegations where the omission of any allegation that an individual was a "shareholder" failed to

trigger a known legal duty, a required element of the tax offense). Whether juvenile conduct by

Mr. Guadalupe is viewed as 404(b) evidence under *Thomas*, conditionally relevant evidence

under *Welch* and *Diaz*, or "legally insufficien[t]," *Pirro*, it should be stricken. *Cf. Hashi*, M.D.

Tenn. 3:10-00260-11, 2012 U.S. Dist. LEXIS 197333 at *6 (holding evidentiary hearing and

striking "certain paragraphs from the … Indictment [in which defendant] was under the age of 18

years old at the time of the alleged offenses"). Stated differently, the present indictment is akin to

one that alleges *only* 404(b) evidence or *only* evidence that is conditionally relevant. Where the fact of the condition is not alleged, striking of the conditional allegations is warranted.

### B. Allegations of co-conspirators' conduct that occurred while Mr. Guadalupe was a juvenile must be stricken.

With regard to the acts of co-conspirators during the period of a defendant's minority, the First Circuit goes even farther in making clear the jury may not consider such acts *at all*:

> [W]hen a defendant has participated in a conspiracy both before and after his eighteenth birthday and the government fails to obtain a certification from the Attorney General under 18 U.S.C. § 5032, *the defendant cannot be held liable for the substantive crimes of his co-conspirators unless there is sufficient evidence for a reasonable jury to find that each substantive crime occurred after the defendant turned eighteen*, was reasonably foreseeable to the defendant, and was committed in furtherance of the conspiracy.

*Díaz*, 670 F.3d at 343 (emphasis added). The First Circuit thus requires that the jury be instructed, in an age-of-majority-spanning conspiracy, that they may not "consider the substantive crimes of co-conspirators committed before the defendant's eighteenth birthday in assessing the defendant's liability." *Id*.

If the jury cannot "consider the substantive crimes of co-conspirators committed before the defendant's eighteenth birthday," *id*., those substantive crimes are – by definition – irrelevant. *See id*. (recognizing the jury should have been instructed "that it could not hold Rodríguez liable for the substantive acts of his co-conspirators unless the jury first found that those acts occurred after Rodríguez turned eighteen"). Under this standard, all acts by any co-defendant prior to October 26, 2019 must be stricken from the indictment.

### CONCLUSION

For the reasons discussed above, the indictment in this case cannot stand and the Court should dismiss it. Alternatively, it should strike all allegations of conduct occurring prior to Mr. Guadalupe's 18th birthday and/or order the requested discovery.

Respectfully submitted,

**KEVIN GUADALUPE**

By his attorneys,

 */s/ William W. Fick*
William W. Fick (BBO# 650562)
Amy Barsky (BBO#601111)
FICK & MARX LLP
24 Federal St. 4th Fl.
Boston, MA 02110
(857) 321-8360

## **Certificate of Service**

I hereby certify that on November 11, 2020 this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ William W. Fick*